The next case is Jose Santana de la Rosa et al versus Edwin Santana de la Rosa. Appeal number 20-1655. Attorney Mendez Gomez, please go ahead and introduce yourself for the record and proceed with your argument. May it please the court. Good morning, your honors. My name is Nestor Mendez Gomez. I'm counsel for the appellants Jose Santana and Jose Algarin. And if I may at this time, I'm going to request to reserve three minutes for a rebuttal. Yes. Thank you, your honors. In this case, my client's appellants have to establish that Edwin Santana is the appellee's domicile in New York. They have to do that with two ways. Number one, they have to establish that he was present in New York at the time of the complaint. They did that. The district court concluded that he was present there. The appellee conceded that his client was present there because he did that in his brief. The second prong that my client had to establish to establish diversity of citizenship was that the appellee intended to remain there. With respect to that intention, appellee conceded also in his brief that Mr. Santana was not only present in New York at the time of the filing of the complaint, but that that presence was the consequence of a relocation to New York because of Hurricane Maria. That's at his brief at pages 14 and also at pages 21 and 22. So we have a situation here where the appellee relocated undisputedly to New York because of Hurricane Maria. So the only issue here is whether that relocation, admitted relocation, included his intent to remain there. Or as this court put it in Haas v. Club Equestre, the issue is whether a defendant intended to make New York his, and I quote, home for the time at least, quote, close of the quote. We submitted evidence indeed of that intent. Unfortunately, the court disregarded most of the evidence that we presented related to that intent. Indeed, the court in its decision said that by presenting travel records, telephone records, and bank records, plaintiff had shown the physical presence in New York of the appellee. But although that was a correct conclusion as to the presence, the first part of the analysis, it was erroneous in that that same evidence was also presented to establish the intent of the appellee to make New York his home after his relocation. The court compounded that error, in other words, not considering that evidence both for the purposes of presence and intent, by further wrongly concluding that plaintiff had only pointed to three factors to support New York as defendant's domicile with respect to the intent prong. And I quote from the decision, the court said we had only pointed out to the location of defendant's real property, the location of his bank accounts, and the location of his daughter's education. We'll tell you why that was completely wrong. But the court went on to say, and we submit, apply the wrong standard when he said none of these factors pointed entirely in the direction of a New York domicile, which we don't believe is the correct standard. But going back to the point of the fact that the court said we only established three factors, he ignored completely the travel records, and the travel records were key. The travel records were key because they showed that although the appellee did return to Puerto Rico during the 14th period, for a few times, he would always return to Puerto Rico. All the travel itineraries and the plane tickets were ticketed from New York to Puerto Rico back to New York, showing an intent to remain in New York. The court completely ignored that, and we submit he shouldn't have, because after all, domicile is partly defined as the place to which whenever someone is absent, a person has the intention of remaining, citing from your case, the circus case in Padilla, Managua. Now, doesn't the judge have a right to respond to the issues that you raise? Now, there are a number of factors that are set forth. They're all well known in the Aponte Davis type of case, and in your own memorandum, which is set forth beginning at appendix 389, you argue pretty thoroughly physical presence, which you found on your behalf. But then, when you turn to intent to make that place a home, you argue on pages 400 through 407, his bank accounts, his daughter's enrollment at Marymount, the value of the residential properties, cell phone usage, and motor vehicles. But what the judge did is he responded to the arguments you raised, and he said he found no evidence of things such as voter registration, record of voting, where he pays his taxes, and driver's license. And why isn't the court allowed to respond to the issues that you raise, as opposed to, and look for and compare what you have argued, as opposed to what is required under the case law? Your Honor, we submit that we did argue that the bank accounts, the travel records, the phone records, did show the intent at page 12 of our memorandum. We used those same bank accounts, not just for the physical presence, but to demonstrate the day-to-day life of the defendant and his wife in New York, which would be, in terms of Bank One, the social and domestic life that they had in New York, which this court said was even more important as a factor than, for example, business or employment. That's what the bank account statements, the phone records, and the travel records showed, and we'll go to the value of the residential property in a minute, that the social and domestic life that these people were living in New York was that of someone that intended to remain there indefinitely, or at least for the time period of their relocation. So we did argue that those factors did go to intent. The court basically said, no, you didn't even analyze it. It just considered those factors for the purpose of location. Well, the court considered the arguments you raised. No, no. Those, for example, the court did not consider that in the bank statement, which we did argue, the defendant... You didn't argue voter registration, and that has been a key. No. You didn't argue record of voting. You didn't argue where he pays taxes. And you didn't argue the driver's license. We didn't argue that because it wasn't even raised in the motion to dismiss. That's true. Well, we did argue that the license was irrelevant when someone lives in Midtown, Manhattan, and you have Uber, and we argued that the account statement showed the Uber use. So we did argue the irrelevancy of the Puerto Rico driver's license. The voter registration wasn't even raised in the motion to dismiss. There's no evidence as to that. But even that, in Garcia Perez or in Haas, that's a remnant of the previous domicile, which does not weigh completely in one way. We don't say the court cannot weigh it, but he ignored the context within which that voter registration was brought. We also brought up to the judge, and he ignored a representation made by the appellee that his personal address was in New York, and this was a representation made in the bank account which he brought up. We brought up the fact that the bank account showed the moving expenses precisely at the time of the relocation. He also ignored that. The travel records he ignored completely. He didn't consider the phone records either for purposes of the application of the domestic life. So we did bring up those facts and used the account statements to show the factor of the domestic life, which he disregarded. And with respect to the real property, we didn't just post it for purposes of the location, but also for the value, which typically, and he can weigh whether the value of a residence you mean to be your home is more than the value of the residence typically that you mean to have for a second home or a vacation home. And the court disregarded that, said, I don't have the value, which he did. At least he had a stipulation from the parties, which he ignored completely that the value of the New York property was a lot more than the one in New York. We also said another factor, improvements to the home, more than a quarter of a million dollars on top of the $10 million price. And that one, he said, well, yeah, that should show intent, but, you know, I'm going to disregard it because he had a previous property in New York in 2008. So he really disregarded, did not weigh all of the factors he just ignored. And then at the end, he basically put all of his emphases on the three factors you mentioned on the registration to both driver's license and where he pays his taxes. Now, as to the latter, we believe that that's the wrong conclusion, because in Garcia Perez, you did conclude that the act of filing the return is not by itself evidence of domicile. So he gave a lot of weight to a factor that he shouldn't have considered as determinative. And with respect to the registration to vote, as I said, that's a remnant from from from where he lived before in Garcia Perez and Haas. The fact that you keep contacts or have registrations or even licenses in your prior place doesn't is not determinative. I think here the problem is that he did not weigh all of the all of the factors completely disregarded some. And that's why we think that at the very least, you should remand for further development of the record and an evidentiary hearing, particularly since the evidence we propose did put into question the credibility of his original affidavit in support. Why should we why should we remand for an evidentiary hearing when you didn't ask for one? We asked for one at the beginning. You know, you asked for what you did was you filed a motion in support of the court's jurisdiction. Your words were that you wanted a you wanted jurisdictional discovery and a hearing if necessary. But then when it came around for the actual motion, you filed a motion and the motion itself attached all the evidence that you wanted the court to review. We passed over a thousand pages and you didn't ask for an evidentiary hearing at that time. At the beginning, we did say that after submitting the motion, the court should consider an evidentiary hearing. But when the motion with the evidence was submitted, we did not repeat that. Although in the rule of 59, we did repeat it. And the reason we did not repeat it is we submitted all of the evidence. At that time, we could not foresee that the court did not even evaluate all of the evidence that we had submitted, had disregarded it, had put a had only considered three factors, had given undue weight to one factor that this court has said should not be considered. Why wouldn't the judge be justified in concluding that you had decided you attach nine exhibits, those nine exhibits were over 1,800 pages, and that you were satisfied with presenting the court with what you discovered in discovery. You didn't ask for an evidentiary hearing, and he could rule as appropriate on the 1,800 pages of evidence that you submitted. Well, the fact is, discovering this case was really difficult. And there were 13 motions to compel. The court was quite conscious of that. I'm not asking you about how difficult discovery was. I'm asking you why the district judge wasn't allowed to draw the conclusion that you were resolved to proceed on the nine exhibits of 1,800 pages rather than evidentiary hearing since you didn't ask for one. First, we had questioned the credibility, and he should have considered that. But more importantly, when he disregarded some of the factors we presented and only put a lot of weight on three factors, it in our case basically meant that he had not based his decision on a fully developed record. The opinion on order reflects context, absolutely reflects context, and the basis for which he disregarded a lot of our evidence and put a good weight on only three factors. Are there additional questions from Judge Woodcock, Judge Thompson? You've reserved some time, Mr. Mendez, if you would mute your device at this point. Thank you. Mr. Vicente. Good morning once again, Your Honor. I'd like to essentially rely on our brief. I don't want to take unnecessarily the time of this court re-arguing issues. I just want to address a couple of things that have been raised during moral argument here by Mr. Mendez. The central issue here is plausibility. The district court, Judge Helping, Judge Helping's decision was plausible on the record, on the record that Mr. Mendez submitted, not any other record. And with respect to that, I'd like to mention a couple of things. First, regarding the vehicle, the argument regarding the absence of vehicles in New York, that he could use Uber there, that came out for the first time in his motion to amend the judgment. That was not raised at the initial level with the trial court. And the trial court properly rejected that belated argument. The second one, that he had some sort of an obligation under federal law to pay taxes in the U.S., also was raised for the first time by Mr. Mendez in his motion to alter judgment and never was raised before the trial court when he submitted the 1,800 pages of documents. With respect to the Vivian Sherry hearing, Judge Woodcock, you are correct. It was never asked for. I gave him the opportunity before Judge, Magistrate Judge who heard, who had a hearing on issues regarding discovery. I took my clients there and made them available to answer under oath any questions, and Mr. Mendez declined. And Judge, Magistrate Judge then, Magistrate Judge Carreño, stated that he would, that she would oblige if Mr. Mendez wanted to go through the process of examining my client in her presence, and that was declined. So, those three arguments are belated arguments that came up after the fact, and after Judge's correct and well-reasoned opinion. The record is absolutely and elusively clear. Was your client deposed? Yes, yes. That's another matter. He was deposed, and as a matter of fact, the appellants have failed to include the transcript of the deposition. They just put in a couple of translated portions of the deposition transcript, which they thought was to their convenience, but they left out, deliberately left out, anything having to do with the statements made by Mr. Santana, that his intention was always to live in Puerto Rico, that he was relocated temporarily, temporarily in New York as a result of the events of the hurricane, which devastated this island. Their daughter's school was closed. They are both retirees. They have the financial ability to relocate and put their daughter in school, but at the end of the day, her daughter never left her school in Puerto Rico. They continued to pay the tuition in Puerto Rico, and in fact, she came and graduated from high school in Puerto Rico, because that's where she wanted to graduate from, because that's where they had made a living all of their lives, and this is what they call home. Any attempt to the contrary is an incorrect interpretation of their intention. There are other elements. Objective indicia of domicile. Edwin is registered to vote in Puerto Rico, has never voted in New York. The contracts in Puerto Rico, the evidence shows that he had all the tuition payments were made in Puerto Rico. His automobile leasings are in Puerto Rico. He kept them all. He has brokerage services in Puerto Rico. He never transferred any of that. Gas station charges are all in Puerto Rico. There were hundreds of checks which paid for services in Puerto Rico. All of their physicians are in Puerto Rico. All of them. Dentists, neurologists, all of that is in Puerto Rico. And I'd like to say one final thing, because I don't want to take the valuable time of this court unnecessarily. In their reply brief, the police mentioned two First Circuit cases, the Hayes case and the Santa Ella case. And they cite those cases for the proposition that a relocation under an emergency situation cannot be considered. But to me, those two cases of this court, the district court in Puerto Rico, have another way of being looked at. Those two cases, the court, in the two cases, they were relocations because of medical reasons in the two cases. One was a child that had to go to Florida, Miami Children's Hospital, and the other one was someone who had to go to get medical attention in the States, which was not available in Puerto Rico. In those two cases, the plaintiffs clearly expressed their intention to remain in that new jurisdiction. In this case, the intention, as expressed by the appellee in this case, is his intention to remain a resident in Puerto Rico. So if intention of the party itself, themselves, is going to be considered, and given the added weight that the court, the First Circuit, has given to that intention, we look at the intention in this case, the intention of Mr. Santana, the intention of Mrs. Santana, was to remain domiciled in Puerto Rico, and they never severed ties with the place that they had called home forever. And that intention, the appellees have not been able to contest or refute. Counselor, I'm sorry, I assume that your client said that in their deposition? Yes, my client... And the question is, are those pages from the deposition in the record here? No. No. Because the appellants only included in the record what was to their advantage. And if the court would want us to submit additional transcripts, translations of those transcripts, we'll be willing to do so if you so order. Did the court give you an opportunity to make submissions below? Did you have an opportunity to submit your own portions of the deposition transcript? It wasn't necessary, because the court ruled in our favor after the submission of the 1,800 pages of documents that the appellees filed. And the order... This was such a clear case. It was developed after 18 months of extensive discovery, including a hearing with then-Magistrate Judge Carreño, that all the evidence was truly developed, and it was there. All the evidence that the appellants wanted to use to comply with their burden of establishing a change of domicile. And once that evidence was out there, there was no need to supplement with the transcript. That was never an issue. What happened was you filed a motion, and then you filed an affidavit with the motion. That's correct. And then the plaintiffs responded and presented additional information, and you made the determination, I gather, not to attempt to supplement the record with further information from discovery. That is correct, because we felt it was totally unnecessary. The record was absolutely and elusively clear. My clients always had the intention of remaining residents of Puerto Rico, and the change to New York was absolutely temporary and as a result of what was happening in Puerto Rico at the time. Judge Torruella was a resident of Puerto Rico, even though he spent a lot of time in Boston. His intention was to be here. That's a very clear case, and this is the same identical situation Judge Woodcock. Other than that, I have nothing further. If you have any questions, I'll be delighted to answer them. If you don't, well, I just want to thank you for the opportunity and wish you well. I think this has been a very interesting new process. I hope we can continue to use it in the future so we don't have to travel so much. Thank you, Mr. Vicente. A lot of attorneys share that. If you would mute your device, Mr. Vicente, thank you. And Mr. Mendez, you have rebuttal time. I'm back. Thank you very much. May I reply? Yes, please. Okay. With respect to the point that we never raised the issue of the license, I'll refer the court to docket number 85, page 19, the motor vehicles and the whole issue of why the midtown location of the home was discussed there. So it's not correct that we first raised it on Rule 59. With respect to the expression of intention, it was asked whether the statement in the deposition was part of the record. No, but what is part of the record and where the appellee did express his intention was his affidavit. That's part of the record, part of the motion to dismiss. And one of the reasons we think an evidentiary hearing here should be ordered is because the statement on the penalty of perjury, the credibility of that statement was shown with the evidence to at least be highly questionable. Number one, there, the police said that since 1992, his home and residential address had been in Lucchetti. And that's it. As if he had never lived anywhere else when the uncontroverted evidence that in the Pertina period, 2017, 2018, he lived for more than 183 days most of the year in New York at the Baccarat. So that first statement is simply not entirely correct, to be generous. In the second statement, he talked about the intention of returning to Puerto Rico. Yes, but the travel records that were submitted during the Pertina period always showed that he returned to New York. He went to Puerto Rico for a definite time and returned to New York for an indefinite time. So that second statement, again, lacks credibility. With respect to the fourth statement, where he claims that his daughter had been a student at St. John's in Condado since pre-kinder and continues to be enrolled as such, was simply false. There is evidence on the record that the daughter relocated with them to New York to study her junior year at Marymount College. So that statement is incorrect. Again, the credibility of the statement and the whole, the big issue in this case, the intent was shown to be questioned. And this court has said what that one, and by the way, was Mr. Santa Dela Rosa's home damaged by the hurricane home in Puerto Rico? No, not at all. Was he asked? It wasn't presented. Was he asked? We're generally aware of the devastation that impacted the island and the lack of electricity. What is part of the record, I can tell you that he did go back to his apartment in Puerto Rico and then returned to New York during the, in the aftermath of Hurricane Maria. So there's no evidence that there was any damage here. And indeed, he did go back. Now, in, in, in, in Bank One, the court said that you should not rest, the district court should not rest the decision solely on a paper record, which is what happened here. Again, because there was no auto testimony and should hold, must hold a hearing, it said, in order to adequately assess credibility. That's the only way that sound decision and intent can be made. So that's what we've shown it should happen here. And again, when, when a case is only based on, on, on documentary evidence, although the clearly erroneous standard applies, the presumption of correctness has lesser force when it's only documentary evidence. As in this case, finally, as to the point that Mr. Vicente said about the hearing, what, what the, the hearing before Judge Carreño was not an evidentiary hearing. It was not an evidentiary hearing. It was to dispose of certain discovery matters. What we did say, say there is that after all discovery was completed, then the issue of an evidentiary hearing may be, or should be made by the court, which the court did not do. And in retrospect, should have done, particularly when the credibility of the appellee and his statement, basically sustaining the intention, as we summarized, was called into question by the judge. So that's evidence that we presented. Indeed, the issue with respect to the daughter, the record not only reflects that she went to New York to study, but although, yes, she went back to Puerto Rico for her senior year, but the evidence showed that her parents were in New York. The phone records revealed them to be in New York during, during the first semester of that senior year, based on the number of days that they spent in New York during that period. That was part of the, of the record that again, the district court did not consider whatsoever. So we submit that, you know, given the multiple errors, there is a clear error and that the court should at least remand the case so that the district can appropriately and completely consider all of the evidence that we submit the district court did not in one deciding the motion to dismiss. Thank you, Mr. Mendez. Thank you. That concludes argument in this case. Attorney Mendez and attorney Vicente should disconnect from the hearing at this time.